IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT C. GUTIERREZ, individually
and as representative of a class of
TRANSIT DEPARTMENT PLAINTIFFS,
and OTHERS SIMILARLY SITUATED,

    Plaintiffs,

vs.                                                                   Civil No. 04-290 WJ/WDS

JENNIFER BEAN, Official Court Reporter,
BEAN & ASSOCIATES, Court Reporters,
and MATTHEW DYKMAN, Court Clerk,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS'
MOTION TO DISMISS, MOTION FOR JUDGMENT ON THE
PLEADINGS AND MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' FEDERAL AND STATE ANTITRUST CLAIMS**

THIS MATTER comes before the Court pursuant to Defendant's Motion to Dismiss, Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Federal and State Antitrust Claims (Doc. 47). Having reviewed the submissions of the parties and being otherwise fully advised on the law, I conclude the motion is well taken and shall be granted.

**FACTUAL AND PROCEDURAL HISTORY**[1]

Plaintiffs sued the City of Albuquerque ("City") in or around 1996. During the course of that litigation, Plaintiffs wished to obtain copies of transcripts of hearings before a special master. Plaintiffs submitted a written public records request for the transcripts to the City and to Bean &

---

[1] The background facts are a condensed version of those found in the Court's Memorandum Opinion and Order filed August 7, 2006 (Doc. 44). Also included are facts necessary for the determination of this motion.

Associates, a private court reporting firm that had recorded the hearings. Bean & Associates refused to provide copies of the transcripts unless Plaintiffs paid $2.00 per page for them. However, the City had already obtained copies of the transcripts at $4.50 per page, and provided Plaintiffs with the transcripts on computer disks for $1.00 per disk for a total charge of $16.00. The transcripts had also been provided to the Court but were not filed with the Clerk's office. Subsequently, the judge presiding over the underlying lawsuit entered an order requiring Plaintiffs to pay fees to Bean & Associates for any copies of transcripts Plaintiffs had received from the City that had originally been prepared by Bean & Associates. The judge also placed a lien in the amount of reasonable court reporters' on any recovery received by Plaintiffs in the lawsuit. Plaintiffs did not move the court to reconsider its order or the lien. A year later, Plaintiffs did move to quash the lien, but the court entered final judgment in the lawsuit before ruling on the motion to quash. Plaintiffs did not appeal any of the issues in the lawsuit following the entry of final judgment in that case. However, before final judgment was entered, Plaintiffs filed this lawsuit against Bean & Associates ("Defendant").[2] At the time Plaintiffs filed the Complaint, Defendant was continuing to bill them for the transcripts they had received from the City. Plaintiffs' Amended Complaint alleged five counts against Defendant. By Memorandum Opinion and Order filed August 7, 2006 (Doc. 44), this Court dismissed all but Count 3.

Count 3 of Plaintiffs' Amended Complaint alleges a claim of Unfair Trade Practices and Price Fixing. Plaintiffs allege that

> 41.   Defendant court reporters have misrepresented their purported 'ownership' of the transcripts. The transcripts were the property and public records of the City

---

[2] Other defendants were initially named but have subsequently been dismissed.

>of Albuquerque.  As such Defendant court reporters had no possessory or residual interest or control over the transcripts.
>42. The copying fee demanded by Ms. Bean and Bean & Associates exceeded the maximum fee for copies of transcripts set by the Judicial Conference and adopted by the new Mexico U.S. District Court.
>43. By insisting that Plaintiff purchase paper copies or pay the charge for paper copies for computer disks containing a digital file, Defendants misrepresented paper copies of transcripts as having characteristics, uses, costs, and benefits that they do not have, all in violation of the New Mexico Unfair Trade Practices Act.
>44. Forcing litigants to buy paper copies at a high cost under the false representation that such costs are legally approved, justified, required or warranted, [sic]
>45. By implying, suggesting or stating that $2.00 per page for copies of public record transcripts is reasonable, justified or appropriate, when it is not, the court reporters are engaging in unfair trade practices.
>46. Charging or attempting to charge a fixed rate of $2.00 per page for copies that actually cost only pennies per page to copy constitutes price-gauging and price-fixing and results in a gross disparity between the price charged for copies of transcripts and the value received.
>47. Defendants' failure to file copies of transcripts with the Clerk of the Court in violation of the requirements of the Court Reporters Act in order to sell copies at a rate higher than the rate allowable under law constitute violations of the Unfair Practices Act.
>48. When they artificially inflate and fix the fee for making paper copies of transcripts and "tie" the computer disk containing the transcript in digital files to the paper copies, Defendants artificially inflate and fix the costs of making copies of original transcription and are ingaging in illegal price-fixing, price-gauging and "tying."
>49. By their acts and omissions described herein, Defendants are violating the New Mexico Unfair Trade Practices Act, Section 57-12-1 et seq. NMSA, and are engaging in illegal price-fixing and tying contrary to federal and state law.

Amended Complaint ¶¶ 41-49.

Defendant's have filed two separate motions directed toward the claims asserted in Count 3.  The New Mexico Unfair Practices Act claim is addressed by separate motion.  The instant motion addresses Plaintiffs' federal and state antitrust claims.  Defendant contends that they are entitled to judgment on the pleadings on Plaintiffs' antitrust claims.  Defendant also contends it is entitled to summary judgment on Plaintiffs' price-fixing claim.  Because I conclude that Defendant

3

is entitled to judgment on the pleadings on all Plaintiffs' antitrust claims, I need not address the motion to the extent it seeks summary judgment and I need not consider matters outside the pleadings.

**LEGAL STANDARD**

The same standard used to evaluate a Rule 12(b)(6) motion is used to evaluate a Rule 12(c) motion. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 n.2 (10th Cir. 2002). Under Fed. R. Civ. P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Curtis Ambulance of Florida, Inc. v Board of County Comm'n of the County of Shawnee, Kansas, 811 F.2d 1371, 1375 (10th Cir. 1987). When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations of fact in the Complaint and construe them in the light most favorable to the plaintiff. Tonkovich v. Kansas Bd. of Regents, University of Kansas, 254 F.3d 941, 943 (10th Cir. 2001). Allegations which state legal conclusions rather than plead material facts are not accorded deference, nor should unwarranted inferences of fact or conclusions of law be drawn from such allegations in order to preclude dismissal. Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990) (citing Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957)).

**DISCUSSION**

From the allegations in Plaintiffs' Amended Complaint, it is clear that Plaintiffs intend to bring claims based on both federal and state antitrust law. Plaintiffs allege "price-gauging", price-fixing, and tying.

I.      FEDERAL ANTI-TRUST CLAIMS

4

      A.     <u>Price Gauging</u>

The Court has been unable to find any evidence of a claim for price "gauging" or "gouging"[3] under federal law. Some states do have price gouging statutes that prevent sellers from charging grossly excessive prices for consumer goods following natural disasters or other extraordinary circumstances. <u>See e.g.</u>, <u>People ex rel. Spitzer v. Wever Petroleum, Inc.</u>, -- N.Y.S.2d --, 2006 WL 2956110 (N.Y. Sup. 2006) (holding that seller of gasoline had engaged in price gouging following a hurricane in violation of N.Y. Gen. Bus. Law § 396-r which makes it unlawful in New York to charge grossly excessive prices for consumer goods following an abnormal disruption of the market caused by strikes, power failures, severe shortages or other extraordinary adverse circumstances). However, most cases that discuss price gouging mention it as an attempted justification for price fixing. For instance, in <u>Albrecht v. Herald Co.</u>, the Supreme Court determined that a newspaper publisher's attempt to force independent carriers to charge no more than a fixed maximum price was a violation of the Sherman Act and was not justified as an attempt to prevent price gouging. 390 U.S. 145 (1968) <u>overruled by</u> <u>State Oil Co. v. Khan</u>, 522 U.S. 3 (1997) (holding that vertical maximum price fixing is not illegal per se under the Sherman Act). One federal case did discuss price gouging as a violation of federal law, but this was only in the context of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751, (EPAA) pursuant to which the DOE was permitted to issue price control orders governing the sale and resale of crude oil in response to the OPEC embargo. <u>Consolidated Edison Co. of New York Inc. v, Abraham</u>, 2005 WL 736523 (D.D.C. 2005) (unpublished disposition). In the limited period of

---

[3]The Court has discovered that this is more commonly spelled "gouging" but is sometimes spelled "gauging."

time during which the federal government was permitted to control crude oil prices (the EPAA and price controls expired in 1981), a distributor charging more than the controlled price was price gouging in violation of federal law. Id. The EPAA specifically addressed antitrust laws, and set out various checks and balances to prevent the price control orders from harming competition or violating the antitrust laws. See Pub. L. 93-159 § 6. Thus, laws and private maximum price fixing which seek to prevent price gouging are restraints on trade, and may themselves violate antitrust laws. See e.g., State Oil Co. v. Khan, 522 U.S. 3 (1997) (holding that maximum price fixing is evaluated under rule of reason approach to determine if such price fixing constitutes a violation of the Sherman Act.); In re Jet 1 Center, Inc., 322 B.R. 182 (M.D. Fla. 2005) (noting that there is a state action exemption from antitrust laws for governmental price controls that are reasonably related to legitimate governmental goals).

Because the prevention of "price gouging" is generally a restraint on trade that may be antithetical to antitrust laws, there is no general claim under the federal antitrust statutes for price gouging. Accordingly, Plaintiffs' allegations of price gouging do not state a claim for violation of federal antitrust laws, and Plaintiffs' claim of price gouging shall be dismissed with prejudice.

B.   Price Fixing, Tying and the Sherman Act Generally

Price Fixing and Tying are both per se violations of Section 1 of the Sherman Act. See Northern Pac. Ry. Co. v. United States, 356 U.S. 1 (1958). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be

illegal."[4]  15, U.S.C § 1.  In order to state a claim for a violation of Section 1 of the Sherman Act, a plaintiff must allege facts which show that the defendant entered into a contract, combination, conspiracy or agreement that unreasonably restrains trade in the relevant market.  <u>Full Draw Prod. v. Easton Sports, Inc.</u>, 182 F.3d 745, 756 (10th Cir. 1999); <u>Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 961 F.2d 1148 (5th Cir. 1992); <u>Wilder Enter., Inc., v. Allied Artists Pictures Corp.</u>, 632 F.2d 1135 (4th Cir. 1980).  "[A] plaintiff must do more than cite relevant antitrust language to state a claim for relief.  A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws."  <u>Full Draw Prod.</u>, 182 F.3d at 755 (citing <u>TV Communications Network, Inc. v. Turner Network Television, Inc.</u>, 964 F.2d 1022, 1024 (10th Cir. 1992)).

Plaintiffs' Amended Complaint alleges no facts showing any type of contract, combination, conspiracy or agreement.  Accordingly, Plaintiffs don not state a claim for any violation of Section 1 of the Sherman Act including a claim of price fixing or tying.  Defendant is thus entitled to dismissal with prejudice of such claims to the extent any are attempted to be brought under Section 1 of the Sherman Act.

In an abundance of caution, Defendant has addressed Section 2 of the Sherman Act in its motion to dismiss.  Section 2 of the Sherman Act provides that "any person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign

---

[4] Both Sections 1 and 2 of the Sherman Act are criminal statutes making felonious any conduct that violates the Act.  However, the Clayton Act, 15 U.S.C. § 15, provides a private right of action to enforce the Sherman Act.  Thus, a civil complaint alleging violations of the Sherman Act is brought pursuant to the Sherman Act and the Clayton Act.

nations, shall be deemed guilty of a felony . . . . 15 U.S.C. § 2. "[T]o state a claim for attempted monopolization under Section 2, a plaintiff must plead: (1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt. Full Draw Prod., 182 F.3d at 756 (internal citations and quotations omitted). "[T]o state a claim for conspiracy to monopolize under Sherman Act § 2, the plaintiff must plead: "conspiracy, specific intent to monopolize, and overt acts in furtherance of the conspiracy." Id. (internal citations and quotations omitted). "[T]o state a monopolization claim under Sherman Act § 2, the plaintiff must plead: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Id. (internal citations and quotations omitted).

Plaintiffs' Amended Complaint does not allege any facts from which a relevant geographic or product market may be inferred. There are no facts pleaded that would tend to infer any specific intent to monopolize. As the Court has already noted, there are no factual allegations in the Amended Complaint of a conspiracy, contract, agreement or combination to support any type of conspiracy claim. Finally, there are no allegations regarding the possession of monopoly power. Accordingly, Plaintiffs Amended Complaint does not allege facts that state any claim under Section 2 of the Sherman Act, and Defendant is entitled to dismissal with prejudice of any claims Plaintiffs attempt to state under this Act.

II.     ANTI-TRUST CLAIMS UNDER STATE LAW

Under the New Mexico Antitrust Act (NMAA), "[e]very contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state is unlawful."  N.M. Stat. Ann. 1978 § 57-1-1.  Also, "[i]t is hereby declared to be unlawful for any person to monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, trade or commerce, any part of which trade or commerce is within this state."  N.M. Stat. Ann. 1978 § 57-1-2.  As is obvious from the statutory language, the NMAA is similar to the Sherman Act.  Moreover the statute explicitly references federal antitrust law and declares that, "[u]nless otherwise provided in the Antitrust Act, the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws.  This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices."  N.M. Stat. Ann. 1978 § 57-1-15.  New Mexico courts also look to federal interpretations of federal antitrust law to guide the interpretation of the NMAA.  Smith Mach. Corp. v. Hesston, Inc., 694 P.2d 501, 505 (1985).

There is nothing in New Mexico antitrust statutes or case law recognizing a cause of action for price gouging.  As previously noted, the **prevention** of price gouging is more likely to violate antitrust laws than price gouging itself.  Defendant is entitled to dismissal with prejudice of Plaintiffs' antitrust claims under state law to the extent price gouging is the basis for the claims.

The NMAA pleading requirements for claims of price fixing, tying and, generally, all claims under the NMAA are the same as those for Sections 1 and 2 of the Sherman Act.  Accordingly, for the reasons stated for the dismissal of the federal antitrust claims, Defendant is entitled to dismissal with prejudice of Plaintiffs' antitrust claims brought pursuant to state law.

Because I have concluded that Defendant is entitled to dismissal of Plaintiffs' state and federal antitrust claims under Fed. R. Civ. P. 12(c), I need not address Defendant's motion to the extent it seeks summary judgment on the price fixing claims, and I need not consider any matters outside the pleadings.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Federal and State Antitrust Claims (Doc. 47) is hereby GRANTED pursuant to Fed. R. Civ. P. 12(c), and Plaintiffs' antitrust claims in Count 3 of the Amended Complaint brought under state or federal law are hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE